**Ernst Kristof Friedrich ZUNDEL,
Plaintiff–Appellant,**

Ingrid A. Zundel, Plaintiff–Appellant,

v.

James BERRONG, in his capacity as Sheriff and Chief Executive Officer of the Blount County Jail, Blount County, Tennessee, Defendant–Appellee,

Immigration and Naturalization Service, an agency of the United States Government, by and through Gary Slaybaugh, its representative, Defendant–Appellee.

No. 03–5212.

United States Court of Appeals, Sixth Circuit.

Aug. 2, 2004.

Boyd W. Venable, III, Sevierville, TN, Joseph T. McGinness, Cleveland, OH, for Plaintiff–Appellant.

Pamela G. Steele, Asst. U.S. Attorney, U.S. Attorney's Office, Knoxville, TN, Russell J.E. Verby, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Defendant–Appellee.

Before MARTIN and SUTTON, Circuit Judges; and WILLIAMS, District Judge.*

SUTTON, Circuit Judge.

Although the precise nature of the events that resulted in Ernst Zundel's deportation to Canada casts more shadows than light on this appeal, several initial facts are clear. Ernst Zundel is a German citizen who, prior to his entry into the United States, had lived in Canada for 42 years where he had been an active proponent of Holocaust-revisionist theories and a writer of anti-semitic tracts. He entered the United States at some point in 2000 and has since resided in Sevier County, Tennessee with his wife, Ingrid Zundel, who is also a party to this lawsuit.

After taking up residence in Tennessee, Zundel applied for an adjustment of his immigration status to become a permanent resident based upon his marriage to Ingrid, a U.S. citizen, on January 19, 2000. The INS scheduled a hearing on his application for June 12, 2001. Zundel's lawyer, however, could not attend the hearing and

* The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

notified the INS of a conflict. Neither Zundel nor the INS apparently took any further measures to reschedule the hearing until May 6, 2002, when Zundel's lawyer wrote to the INS to request a new interview date.

Zundel heard nothing further from the INS until February 5, 2003. On that date, officers of the Sevier County Sheriff's Department, acting in conjunction with the INS, arrived at Zundel's home, took him into custody and transported him to the Blount County, Tennessee jail. The officers had no warrant at the time of Zundel's arrest, but they presented Zundel with a letter from the INS entitled "Decision" dated that same day. The letter indicated that the agency had denied Zundel's application for permanent residency because he had abandoned his application by failing to appear for the June 12th interview and by failing to contact the INS during the ensuing six months for rescheduling. The letter also stated that "[t]here is no appeal of this decision." When Zundel asked the officers why he was being arrested, they supposedly confirmed what the letter stated, namely, that he had missed an immigration hearing. Appellant's Br. at 4. A warrant prepared later that day indicated that under § 217 of the Immigration and Nationality Act, 8 U.S.C. § 1187, Zundel had entered the United States "on or about the day of March 12, 2000[and] is subject to deportation." *Id.* at 9–10.

While Zundel was in the Tennessee prison, he and his wife filed a complaint captioned: "[Petition for] Writ of Habeas Corpus"; "Petition for Temporary Restraining Order and Preliminary Injunction"; "Complaint for Constitutional Violations"; and "Petition to Set Bond." JA 4. Zundel's prayer for relief requested (in full):

> A. That the Defendants ... be restrained from transferring the [Petitioner] from this jurisdiction pending a hearing on the matter. B. That a Writ issue, on behalf of the Petitioner ... freeing him from unlawful detainment. C. That an injunction issue, enjoining the Defendant ... from holding the Petitioner without bond, or alternatively, this court should set a bond and release the Petitioner pending a hearing on the issues. D. That a preliminary hearing be expeditiously set, inasmuch as this Petitioner is wrongfully imprisoned and is politically persecuted as a result of the exercise of first amendment rights. E. That all of the aforesaid relief be made permanent in a final hearing on this matter. F. That the Petitioner be awarded damages, both compensatory and punitive, and attorneys fees, for the violations of their constitutional rights.

JA 9. The district court marked the complaint "filed" at 11:09 a.m. on February 13, 2003. Five hours later—and without the defendants having filed a motion to dismiss or any other papers—the district court entered the following order, which reads in its entirety: "There being no basis in law to grant plaintiffs the relief they presently seek, the writ of habeas corpus and the petition for preliminary restraining order and preliminary injunction is hereby DENIED." JA 19. The district court did not, however, enter a judgment in the case, *see* Fed.R.Civ.P. 58, and subsequently assigned the case to Magistrate Judge H. Bruce Guyton. Zundel timely appealed the district court's ruling.

One day after the district court issued its order, Zundel moved for an emergency "stay of removal and/or injunctive relief" in this Court, claiming that the INS had illegitimately issued the deportation order. That same day (February 14, 2003), a panel of this court, applying the ordinary test for emergency stays of removal, *Bejjani v. INS*, 271 F.3d 670, 688 (6th Cir.2001), determined that Zundel had "fail[ed] to demonstrate any basis for the requested relief." JA 22–23.

Immigration officials subsequently transferred Zundel from the Tennessee prison to upstate New York on February 16, 2003, then across the border into Canada on February 17th. At the time of his deportation, Zundel supposedly received a paper from the INS notifying him that he could not reenter the United States for 20 years. *See* 8 U.S.C. § 1182(a)(9)(ii) (providing that an alien previously removed from the United States cannot reenter for either 10 or 20 years). Canadian officials apparently took Zundel into custody and continue to detain him for reasons not revealed by this sparse record.

After his deportation, Zundel filed another motion in this Court on June 20, 2003, this time asking the INS "immediately [to] rescind the transfer of [ ] Zundel from the Blount County, Tennessee jail ... on the ground that [the] INS violated ... Federal Rule of Appellate Procedure 23" by transferring him without court authorization before his habeas petition had been decided. *See* Fed. R.App. P. 23(a) (stating that "[p]ending review of a decision in a habeas corpus proceeding ... the person having custody of the prisoner must not transfer custody to another unless a transfer" is authorized by the court). Deciding that this Court's order of February 14, 2003—which denied a stay of removal—authorized the transfer, the panel concluded that Zundel's deportation did not violate the procedural rule.

At the outset, it is important to identify the scope of issues on appeal, which above all requires us to clarify what the district court did and did not do in this case. As we read the district court's one-sentence "order," there is only one thing it conceivably could have done based on the scant information before it (Zundel's complaint) and the speed with which it issued its decision (five hours): Namely, deny Zundel's request for initial emergency relief (*i.e.,* an injunction against his transfer and

against his detention without bond), not dismiss the case altogether as the Government's brief appears to assume. *Compare* Appellant's Br. at 11 ("It is not at all clear ... that the District Court denied all relief sought in the action, or even if Zundels' petition has been denied.") *with* Appellee's Br. at 6 ("[T]he district court properly concluded that it lacked subject matter jurisdiction to hear [the] case."). Consistent with this interpretation, the district court referred in its order to the relief that the plaintiffs "presently seek," did not state that it had "dismissed" the action (but had merely "denied" relief) and has yet to enter a final judgment in the case under Rule 58 of the Federal Rules of Civil Procedure.

■ Having interpreted the district court's action as merely a denial of preliminary relief from the deportation order pending against Zundel, we ordinarily would proceed to review the district court's denial of such relief for an abuse of discretion. *Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1378 (6th Cir.1995). But there is an additional hitch: Zundel's request for *preliminary* relief is now moot. His removal to Canada rendered moot his requests "A. That the Defendants ... be restrained from transferring the [Petitioner] from this jurisdiction pending a hearing on the matter.... C. That an injunction issue, enjoining the Defendant ... from holding the Petitioner without bond, or alternatively, this court should set a bond and release the Petitioner pending a hearing on the issues. D. That a preliminary hearing be expeditiously set." Zundel offers no explanation why these requests for relief are not moot.

■ While the mootness of Zundel's requests for preliminary relief preclude us from reviewing the district court's disposition of those claims, his requests for *permanent* relief—namely, a writ of habeas

corpus vacating his deportation order and damages for alleged constitutional violations—do not suffer from the same problem. *See Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (the release of a habeas petitioner from custody does not render the habeas petition moot provided that the conviction has continuing "collateral consequences"); *Carafas v. La-Vallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Zalawadia v. Ashcroft,* 371 F.3d 292, 298 (5th Cir.2004) (holding that deportation of a habeas petitioner challenging his immigration removal order does not render habeas petition moot because the 5–year statutory bar on reentry constitutes a sufficient "collateral consequence" of the order); *Zegarra–Gomez v. INS,* 314 F.3d 1124, 1127 (9th Cir. 2003) (same, 20–year statutory bar); *Leitao v. Reno,* 311 F.3d 453, 456 (1st Cir. 2002) (same, 10–year statutory bar); *Chong v. INS,* 264 F.3d 378, 385 (3d Cir. 2001) (same); *cf. Spencer,* 523 U.S. at 7, 118 S.Ct. 978 (a habeas petitioner need only satisfy the "in custody" requirement of 28 U.S.C. § 2254 at the time of filing); *Zalawadia,* 371 F.3d at 297 (deportation of an alien habeas petitioner does not deprive court of jurisdiction over the suit). These claims require consideration by the district court in the first instance. *See Univ. of Texas v. Camenisch,* 451 U.S. 390, 394, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (noting that a case as a whole may remain live even though one issue becomes moot).

On remand, Zundel may pursue his habeas petition insofar as he challenges his deportation order and insofar as that order has continuing collateral consequences (*e.g.,* the alleged 20–year bar on reentry), as well as his apparent *Bivens* claims. Whether, as the Government argues, 8 U.S.C. § 1252(a)(2)(B) or (g) strip the federal courts of jurisdiction to hear the remaining claims is a matter for the district court to take up in the first instance. So is the question whether Zundel waived his right to contest removal, which is a condition of entry under the visa waiver pilot program, *see* 8 U.S.C. § 1187(b), because it remains unclear whether Zundel most recently entered the country under this program. Finally, as the Government also notes, the district court will need to address the propriety of Ingrid Zundel's involvement in this suit. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

For the foregoing reasons, we vacate the district court's denial of preliminary relief and remand for dismissal of the portions of Zundel's complaint seeking preliminary relief. *See WJW–TV, Inc. v. City of Cleveland,* 878 F.2d 906, 911–12 (6th Cir.1989).